IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BASILIO TORRES-RIVERA, President
of the Puerto Rico Industrial
Commission,

    **Plaintiff**,

        **v.**

ALEJANDRO GARCIA-PADILLA,
individually and as Governor
of Puerto Rico; GRACE SYLVETTE
LOZADA-CRESPO, individually
and as Designated President of
the Puerto Rico Industrial
Commission,

    **Defendants.**

**CIVIL NO.** 14-1040 (FAB)

**MEMORANDUM AND ORDER
GRANTING PRELIMINARY INJUNCTION**

BESOSA, District Judge.

**I.   BACKGROUND**

Plaintiff Basilio Torres-Rivera was appointed as Commissioner and Chair[1] of Puerto Rico's Industrial Commission ("PRIC") on May 29, 2012 by former Governor and former President of the New Progressive Party ("NPP") Luis Fortuño.  The Puerto Rico Senate confirmed Torres-Rivera on June 19, 2012, and he consequently began to serve what he expected to be a six-year term in office, as prescribed by Law 45 of 1935, which was then in effect.  P.R. Laws Ann. tit. 11 § 8 (2010) (Docket No. 3-1).  Defendant Alejandro

---

[1] Plaintiff refers to this position as "President," but to be consistent with the English translation of the Puerto Rico law, the Court uses the term "Chair."

Garcia-Padilla of the Popular Democratic Party ("PDP") was subsequently elected as Governor of Puerto Rico, and with the changing political tides, new laws have emerged designed to usher the Governor's political supporters into office.[2]  Law 180-2013 is one such law.  Enacted on December 20, 2013, Law 180-2013 changed the PRIC's Chair's term from six-years to "free removal." (Docket No. 15-1.)

On Tuesday, January 14, 2014,[3] defendant Grace Sylvette Lozada-Crespo served upon Torres-Rivera a copy of a letter informing him that by virtue of Law 180-2013, his position as PRIC's Chairman was one of free removal.  The letter, which was dated Saturday, January 11, 2014 and signed by defendant Governor Garcia-Padilla, informed Torres-Rivera that he "may continue to hold the position of Commissioner," but that the Governor had appointed a new Chair.  (Hearing Exhibit No. 4.)  Torres-Rivera testified that Lozada-Crespo then verbally informed him that the Governor had designated her as the new PRIC Chair and provided him with the original letter, which he had requested.  She required

---

[2] This is the third case of its kind to reach this Court's doors since defendant Governor has taken office.  The Court notes that the operative facts in this case are similar to those in Diaz-Carrasquillo v. Hon. Alejandro Garcia-Padilla, Civil No. 13-1646 (Dominguez, J.), and Montañez-Allman v. Garcia-Padilla, 2013 U.S. Dist. LEXIS 151035, 2013 WL 5719153 (D.P.R. Oct. 18, 2013) (Perez-Gimenez, J.).

[3] Monday, January 13, 2014 was a Commonwealth holiday and government agencies were closed.

Torres-Rivera to surrender control of the keys to his office, documents, files, equipment, materials, funds, property, and any other agency resources to her. When Torres-Rivera initially resisted and informed Lozada-Crespo that he would contest her designation and would not surrender control of the agency resources to her, a certain Ramon Santiago, who had accompanied Lozada-Crespo, indicated to Torres-Rivera that he could be arrested and removed by court bailiffs or department of justice Special Investigations Bureau agents. At the end of the day, after Torres-Rivera presided over the hearings he had scheduled that day, he surrendered his office and resources as he had been requested to do by Lozada-Crespo.

Two days later, on January 16, 2014, Torres-Rivera filed a complaint in this Court, seeking declaratory and injunctive relief as well as compensatory and punitive damages pursuant to 42 U.S.C. § 1983; 28 U.S.C. §§ 2201-02; the First, Fifth and Fourteenth Amendments to the U.S. Constitution; and article II, section I of the Bill of Rights of the Constitution of Puerto Rico. He claims that defendant Governor infringed upon his proprietary right to and continued expectancy of employment as Chair by unlawfully removing him from his position as PRIC's Chair without just cause or prior notice. Consequently, Torres-Rivera requested the Court to issue a temporary restraining order ("TRO") directing the Governor to vacate Lozada-Crespo's appointment as PRIC's Chair and allow

Torres-Rivera to remain in his position as Chair.  The Court granted the TRO on January 17, 2014 and scheduled the preliminary injunction hearing for January 31, 2014 at 9:00 a.m.

That morning, the parties appeared before the Court for the preliminary injunction hearing.  Plaintiff submitted five exhibits at the hearing without objection by the defendants.  Both plaintiff Torres-Rivera and defendant Lozada-Crespo testified under oath. Plaintiff Torres-Rivera also clarified at the hearing that he seeks a preliminary injunction on the basis of his Due Process claim alone.  After careful consideration, the Court now **GRANTS** plaintiff's request for a preliminary injunction against defendants.

## II.  LEGAL STANDARD

The general purpose of injunctive relief is to prevent future acts or omissions of the non-movant that violate the law or constitute harmful conduct.  United States v. Oregon Med. Soc., 343 U.S. 326, 333 (1952).  A preliminary injunction "is traditionally viewed as relief of an extraordinary nature and does not purport to be a disposition of the matter on its merits."  Sanchez v. Esso Std. Oil Co., 572 F.3d 1, 14 (1st Cir. 2009) (internal citation omitted).  In order to grant a preliminary injunction, a district court must consider the following four factors: (1) the likelihood that the party requesting the injunction will succeed on the merits; (2) the potential for irreparable harm if the injunction is

denied; (3) the hardship to the movant if enjoined compared to the
hardship to the movant if injunctive relief is denied; and (4) the
effect of the Court's ruling on the public interest.  Id.  While no
single factor is dispositive, the First Circuit Court of Appeals
has indicated that the first factor is the *sine qua non* of the
preliminary injunction test.  See Weaver v. Henderson, 984 F.2d 11,
12 (1st Cir. 1993).

## III. PRELIMINARY INJUNCTION REQUEST BASED ON DUE PROCESS

### A.    Likelihood of Success on the Merits

To receive a preliminary injunction based on alleged
violations to the due process guarantees of the Fourteenth
Amendment, plaintiff Torres-Rivera must first establish a
substantial likelihood that he will succeed on the merits.
Pursuant to the Due Process Clause of the Fourteenth Amendment,
"persons who possess a property interest in continued public
employment cannot be deprived of that interest without due process
of law." Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 5-6 (1st
Cir. 2000) (internal citation omitted).  "It is well established,
both in Puerto Rico and in federal law, that a person has secured
a property right in his employment if he has an expectation of
continuity in said employment." Quiles-Rodriguez v. Calderon, 172
F. Supp. 2d 334, 344 (D.P.R. 2001) (Pieras, J.) (internal citations
omitted) (finding that the Governor may not remove the Chair of the
Public Service Commission, an employee appointed by the Governor to

a term position, before the end of that term).  Torres-Rivera must first demonstrate that he had a reasonable expectation of continued employment as the PRIC's Chair for a six-year term in order to succeed on the merits.  See Acevedo-Feliciano v. Ruiz-Hernandez, 447 F.3d 115, 121 (1st Cir. 2006) ("In a due process claim stemming from the termination of employment, 'a public employee must first demonstrate that he has a reasonable expectation, arising out of a statute, policy, rule or contract, that he will continue to be employed.'") (quoting Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 101 (1st Cir. 2002)).  He then must establish that he was fired without notice and without an opportunity to contest his removal.  Acevedo-Feliciano, 447 F.3d at 121 ("In the public employment context, the required process typically includes 'some kind of hearing' and 'some pretermination opportunity to respond.'") (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)).  The Court addresses each element in turn.

### 1.   **Expectation of Continued Employment**

The foundation of Torres-Rivera's due process claim is Law 45, the statute that created the PRIC.  At the time of Torres-Rivera's appointment, it provided, in relevant part:

> I. *Services organizations.*— The following entities shall be in charge of rendering compensation services to workers and employees:
>
> ....
>
> (b) *Industrial Commission.*—

(1) *Creation and organization.*— A Commission is hereby
created, to be denominated as the 'Puerto Rico Industrial
Commission,' constituted by five (5) Commissioners
appointed by the Governor with the advice and consent of
the Senate of Puerto Rico, who shall be attorneys-at-law
duly admitted to the bar in Puerto Rico. The Governor,
with the advice and consent of the Senate, shall
designate the Chair, who shall serve simultaneously as a
Commissioner and the Administrative Head of this Agency,
who shall set forth and administer the public policy with
discharge rulemaking authority or to delegate such
authority. In order to carry out this task, he/she shall
preside and direct the functions of the Commissioner
panel, whose appointments shall have an effective term of
six (6) years.

Commissioners shall remain in office until their
successors are legally designated and take office.

P.R. Laws Ann. tit. 11 § 8 (2010).  The face of the law indicates

that a fixed six-year term attached to Torres-Rivera's Chair

position, because it makes no distinction between the terms of the

Commissioners and that of the Chair.  Citing to Law No. 62 — an Act approved on May 11, 2002 "to amend clause (1) of subsection (B) of Section 6 of Act No. 45 of April 18, 1935" — defendants argue that the Chair position does not carry a six-year term.  (Docket No. 19.)  Instead, they argue that the appointment to the position of Chair "is separate and independent to the appointment to the position of Commissioner and, therefore, [is] severable from the latter at any time."  (Docket No. 15 at p. 2.)  The Court is unpersuaded.  Although Law No. 62 did provide that the "designation as Chairman is a confidential position [and] it shall be held for a term that shall not go beyond December 31 of the year that general elections are held," (Docket No. 19-1), and that provision was later echoed in Law No. 94 of March 25, 2003, the Legislature later amended Law 45 again and specifically removed that language. (See Law Nos. 94-2003 and 141-2009, Attachment Nos. 1 and 2, respectively.)  Subsequent amendment history reflects the Legislature's decision to include instead a general provision regarding the term length of all Commissioners on the panel: six years.  See Law No. 141-2009, Attachment No. 2.  No subsequent amendment — except for Law No. 180-2013 — separates the Chair's term from that of the other Commissioners.  The very deletion of the provision dictating that the Chair's term was to expire at a different time than his term as Commissioner cuts against defendants' argument that since 1935 the amendments consistently

reaffirm the separability of the Chair's office from that of a Commissioner. The Statement of Motives of Law No. 141-2009, as discussed *infra* in footnote 5, corroborates the Court's conclusion.

The Court also rejects defendants' argument that the statute's six-year "fix[ed]-term is in reference to the tenure of the commissioners that conform the panel but not as to the Presidency." (Docket No. 15 at p. 17.) Simply no language exists in the statute or legislative history to indicate that the Chair's appointed term in 2012 was anything other than the six-year term applying to all Commissioners on the panel, including the Chair. Finding no legal authority for defendants' proposition that the position of Chair is severable at any time, the Court instead views the provisions regarding the removal of the Chair in Law No. 62 and Law No. 180-2013 to be outlier provisions highly motivated by party politics and/or personal vendettas. Simple research reveals that Senator Cirilo Tirado Rivera sponsored Law No. 62 and Law No. 94, which unseated Torres-Rivera as PRIC's Chair in 2003. See Law Nos. 62 & 94, *available at* http://www.oslpr.org/prontuario/; see also Torres-Rivera v. Calderon-Serra, 328 F. Supp. 2d 237 (D.P.R. 2004) (Garcia-Gregory, J.). Senator Tirado subsequently opposed Torres-Rivera's nomination as Chair before the Senate on June 18, 2012, (Exhibit 5 to the preliminary hearing), and upon the change of administration, he introduced Law No. 180-2013, which establishes the Chair's position as one of free removal and which the Governor

cited for the removal of Torres-Rivera on January 14, 2014.[4]
(Docket No. 15-1.)  "As frequently happens with such disputes in
Puerto Rico, the matter was brought to federal court."  Torres-
Rivera v. Calderon-Cerra, 412 F.3d 205, 209 (1st Cir. 2005) (noting
that "[w]ith each change in administration — at both the
commonwealth and municipal levels — the federal district courts in
Puerto Rico are flooded with hundreds of political discrimination
cases . . . .").

        Notably, Law 45 did not explicitly bestow power upon
the Governor to remove the Commissioners or reverse the designation
of the Chair, only to "preside and direct the functions of the
Commissioner panel," and to "designate the Chair, who shall serve
simultaneously as a Commissioner and the Administrative Head of
this Agency."  P.R. Laws Ann. tit. 11 § 8(I)(b)(1)(2010).  Whether
the statute gives plaintiff Torres-Rivera a reasonable expectation
in six years of employment as Chair or instead allows the Governor
to remove that title, therefore, depends on the Governor's
constitutional powers.  See Montañez-Allman, 2013 U.S. Dist. LEXIS
151035, 2013 WL 5719153 (D.P.R. Oct. 18, 2013) (Perez-Gimenez, J.).

        "The Governor of Puerto Rico has a general power of

---

        [4] Plaintiff Torres-Rivera testified that when he was first
appointed Chairman of the PRIC in 1994, he removed Senator Tirado,
who at the time was an assistant to the previous Chairman, from his
position because it was a position of trust.  Twenty years is a
long time to hold a grudge, even in such a politically-charged
place like Puerto Rico.

removal that is statutorily derived." Santana v. Calderon, 342
F.3d 18, 25 (1st Cir. 2003); see also P.R. Laws Ann. tit 3, § 6
(2013) ("The Governor shall have power to remove any officer whom
he may appoint, except officers whose removal is otherwise provided
for by the Constitution, and he may declare the office vacant and
fill the same in the manner provided by law.").  In addition, he is
endowed with constitutional powers of removal, the boundaries of
which the Supreme Court of Puerto Rico has expounded upon on
several occasions. See, e.g., Guzman v. Calderon, 164 D.P.R. 220
(2005) (Attachment No. 3); Santana v. Calderon, 2005 TSPR 86, 165
P.R. Dec. 28, 2005 juris P.R. 91 (2005) (Attachment No. 4).
Analogizing the powers of removal of the Governor of Puerto Rico to
those of the President of the United States, the Supreme Court of
Puerto Rico has held that the Governor enjoys absolute power to
remove an official whose functions are purely executive, but that
the Governor's power is limited in the case of an official who
carries out quasi-legislative or quasi-judicial functions. Santana
v. Calderon, Attachment No. 4 at p. 24 (indicating that it has long
been recognized that the President's power to remove an official
whose functions are purely executive is absolute); Guzman v.
Calderon, Attachment No. 3 at p. 10 (holding that in the case of
officials performing quasi-legislative and quasi-judicial
functions, "any reasonable restriction on the Governor's power of
removal would be valid — unless, of course, it impedes the

Governor's power to perform his or her constitutional duties").

Consequently, the Supreme Court of Puerto Rico has reasoned:

> [A]ny determination on the constitutionality of a statutory restriction on the Governor's appointment or removal power requires a case-by-case analysis in which it is imperative to identify whether the officer performed functions that were **"purely executive"** in nature, or whether he or she exercised quasi-legislative or quasi-judicial powers.

Guzman v. Calderon, Attachment No. 3 at p. 9 (emphasis added).

Inquiry into Torres-Rivera's functions, therefore, is warranted.

It cannot seriously be questioned that the PRIC performs quasi-legislative and/or quasi-judicial functions. Law 45 itself proscribes the Industrial Commission's "functions of a 'quasi-tutelary' and 'quasi-judicial' nature for the investigation and resolution of all cases of accidents." P.R. Laws Ann. tit. 11 § 8(I)(b)(1)(2010). The PRIC is "in charge of rendering compensation services to workers and employees," and in exercising its adjudicative power, it has the capacity to hold hearings; issue citations; take sworn testimony and statements from witnesses; receive evidence; and issue resolutions and determinations directed to individuals. See, e.g., Vega-Cruz v. Indus. Comm'n of P.R., 10 P.R. Offic. Trans. 443 (1980). It thus performs quasi-judicial functions. See Rivera Santiago v. Srio. De Hacienda, 19 P.R. Offic. Trans. 282 (1987) (explaining that an administrative hearing of "a quasi judicial nature" entails the introduction of evidence to the governing body, which then issues a decision setting forth

the reasons or grounds upon which it is based); Murphy Bernabé v. Tribunal Superior de P.R., 3 P.R. Offic. Trans. 958 (1975) ("In the discharge of a quasi-judicial function, the Board of Appeals[] held hearings and received oral and documentary evidence which it evaluated, and on the basis of its evaluation it [issued a conclusion] . . . ."). Indeed, the Supreme Court of Puerto Rico classifies the PRIC as an administrative agency with quasi-judicial functions. Hernandez-Chiques v. F.S.E., 152 P.R. Dec. 941, 949 (2000) (citing various Puerto Rico statutes to determine whether the PRIC may impose sanctions).

        As the administrative head of the PRIC, the Chair's duties necessarily include administrative and adjudicative functions. Not only does he "set forth and administer the public policy with discharge rulemaking authority," "preside and direct the functions of the Commissioner panel," and "oversee the faithful compliance and uniformity of the adjudicative public policy set forth in this chapter," P.R. Laws Ann. tit. 11 § 8(I)-8(I)(b)(1)(2010), but he has adjudicative duties, also. The testimony elicited from Torres-Rivera at the preliminary injunction hearing was that 90% of the Chair's duties are adjudicative, while Lozada-Crespo testified that the Chair's adjudicative functions are "minimal." Whether the Chair spends more time on administrative duties or on adjudicative functions, however, is of no

consequence.[5]

Given that the Chair performs quasi-judicial functions, "the Legislative Assembly may impose restrictions on the Governor's power of removal to ensure that the official has independence to carry out his functions without intervention from the Executive Branch." Montañez-Allman, 2013 U.S. Dist. LEXIS 151035 at *31. One such limitation is a fixed term for the

---

[5] A plain reading of Law 45 in effect when Torres-Rivera was appointed discounts defendants' classification of the Chair's position as "independent and separate from the position of [C]ommissioner," (Docket No. 15 at p. 16), as well as their claim that "the functions of the President are purely executive." (Docket No. 15 at p. 17.)  The statute clearly provides that the Governor shall appoint five Commissioners, one of whom "[t]he Governor — with the advice and consent of the Senate — shall designate as chair."  P.R. Laws Ann. tit. 11 § 8(I)(b)(1).  Once confirmed, the Chair then serves "**simultaneously** as a Commissioner and the Administrative Head of [the] agency," id. (emphasis added), which indicates that the Chair's position is inseparable from the Commissioner's position and he thus performs quasi-judicial functions as part of his combined duties.

As discussed earlier, an independent review of the legislative history of Law 45 and its amendments fails to lend support for reading the Chair as a free-floating and transferrable office that can be freely stripped from the one Commissioner who the Governor originally appointed and the Senate confirmed as Chair.  Indeed, Law No. 141-2009, which detailed the PRIC's tumultuous history and referenced various language regarding the expiration of the Chair's term between 1996 and 2009, reformed Clause (1) of subsection (B) of Section 6 of Law 45 in pertinent part by providing that the Commissioner panel's appointments "shall have an effective term of six (6) years" and not including any language about the term of the Chair.  (See Attachment No. 2 at p. 6.)  Instead, the Legislature explained that "[t]his Act empowers the Governor to designate one of the Commissioners as Chair, who shall at the same time be the chief executive and administrative head of the Agency.  The Industrial Commission thus **merged** its administrative with its adjudicative functions."  (Attachment No. 2 at p. 1) (emphasis added).

position, such as the six-year term provided by Law 45.   See
Humphrey's Executor v. United States, 295 U.S. 602, 629 (1935)
("The authority of Congress, in creating quasi legislative or quasi
judicial agencies . . . includes . . . power to fix the period
during which [the officers] shall continue."). Defendant Governor,
therefore, lacked the power to remove PRIC's Commissioners and
Torres-Rivera as Chair and Commissioner, until their six-year terms
expire.  As stated previously by this Court:

>        [t]he scenario before us is remarkably similar to the set
>        of facts in the case of [Wiener v. United States, 357
>        U.S. 349 (1958)].  In that case, the law that established
>        the War Claims Commission contained no provision with
>        respect to removal of its commissioners.  The United
>        States Supreme Court, upon finding that the War Claims
>        Commission was an adjudicative body, concluded that in
>        light of Humphrey's Executor holding, the President
>        derived no implied power from the statute to remove a
>        member of the Commission merely because he wanted his own
>        appointees.

Montañez-Allman, 2013 U.S. Dist. LEXIS 151035 at *31.   By
historically including a set term for all Commissioners in Law 45,
the Puerto Rico Legislature has consistently indicated its desire
to preserve separability between the PRIC and the Executive Branch.
Simply because the Governor now wants his own appointees to serve
in the PRIC does not mean that he has the power to prematurely end
the current officials' terms of service.  Accordingly, the Court
finds that Torres-Rivera has secured a property interest in his
position as the PRIC's Chair that validly stemmed from Law 45.

2.   **Due Process Requirements**

Because plaintiff Torres-Rivera enjoys a property interest in his position, the Governor was not at liberty to dismiss him without affording him due process of law pursuant to the Fourteenth Amendment.   "The Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 541; Galloza v. Foy, 389 F.3d 26, 33 (1st Cir. 2004).   Employees like Torres-Rivera, therefore, have a right to notice and at least an informal hearing before being discharged.   See Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988).

It is clear from the record that Torres-Rivera was afforded neither notice nor an opportunity to be heard prior to his removal as PRIC's Chair.   The Governor signed the removal letter on Saturday, January 11, 2014, and Torres-Rivera did not receive notice of his termination as Chair until defendant Lozada-Crespo delivered the letter on Tuesday, January 14, 2014.[6]   On that date, defendant Lozada-Crespo informed Torres-Rivera that she had already been appointed as Chairwoman, and she immediately required Torres-Rivera to surrender control of agency resources to her.   No hearing was held to discuss Torres-Rivera's removal, and Torres-Rivera had

_____

[6] Monday, January 13, 2014 was a Commonwealth holiday and government agencies were closed.

no pretermination opportunity to be heard about the loss of his job.  Accordingly, plaintiff has met the first prong of the preliminary injunction standard by proving his likelihood of prevailing on the merits.

**B.   Irreparable Harm**

Torres-Rivera has presented sufficient — though not overwhelming — evidence of irreparable injury to support the second prong of the preliminary injunction standard.  He claims that irreparable harm stems from his inability to carry out powers that the law requires him to exercise, the humiliation and shame he will endure in the eyes of the public and his peers, and damage to his personal and professional reputation.  He testified at the hearing that the radio and newspapers reported his removal almost immediately with a picture of him taken years previously; that being removed from his office made him look like a "criminal, a corrupt  or incompetent person;" and that he suffered "mental and spiritual consternation."  For example, he testified that he is a Catholic missionary and his removal caused his superiors to question his credibility as a spiritual leader.  The Court notes that damage to Torres-Rivera's reputation, standing alone, does not amount to irreparable harm.  See Gately v. Massachusetts, 2 F.3d 1221, 1232 (1st Cir. 1993) ("[T]he [Supreme] Court explained that plaintiff's allegations of temporary loss of income and harm to reputation did not amount to a sufficient showing of irreparable

harm.") (citing Sampson v. Murray, 415 U.S. 61, 89–92 (1974)).
When a plaintiff's claim is that he or she could not as a matter of
statutory or administrative right be discharged, however, the
analysis tips in his or her favor.  See Sampson, 415 U.S. at 91.
Given that Torres-Rivera has made a strong showing of likelihood of
success on the merits, and that "when the likelihood of success on
the merits is great, a movant can show somewhat less in the way of
irreparable harm and still garner preliminary injunctive relief,"
EEOC v. Astra USA, Inc., 94 F.3d 738, 743 (1st Cir. 1996), the
Court finds the irreparable harm element to be satisfied.

     **C.   Weighing of Hardships**

       The balancing of hardships also weighs decidedly in
Torres-Rivera's favor.  Any difficulty or injury he will likely
suffer if the injunction is not imposed far outweighs the
difficulties or injuries to the Governor if the injunction is
imposed.  An injunction will ensure that Torres-Rivera remains in
his position as Chair and Commissioner of the PRIC for the
remainder of the six-year term to which he was appointed.  The
Court is unpersuaded that by prohibiting the Governor from
appointing defendant Lozada-Crespo — or any other person — as Chair
until further order by the Court, the Governor's constitutional
powers of removal would in any way be hindered.  Moreover,
defendant Lozada-Crespo only enjoyed an interim designation and was
not confirmed as PRIC's Chair and Commissioner and thus does not

possess any property interest in that position.  Given the narrow scope of the injunction, defendants do not stand to suffer as much hardship, if any, as Torres-Rivera would face absent injunctive relief.  Accordingly, the balance of hardships weighs in favor of issuing the injunction.

### D.  Public Interest

A court may only issue a preliminary injunction if "a fit (or lack of friction) between the injunction and the public interest" exists.  Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003).  The Court need not linger on this issue.  "[T]he fact that the Founding Fathers established the doctrine of separation of powers . . . towards prohibiting exactly this kind of crass intrusion make the argument for erring on the side of [plaintiff] even more compelling." Quiles-Rodriguez, 172 F. Supp. 2d at 345.  "The Executive, in this instance, while having the power to appoint Commissioners, was simply not given the *power to remove them*, and cannot, therefore, invade this sphere of government to do so at [his] will." Id. at 346.  This factor weighs in favor of an injunction.  Because all four factors are met, plaintiff Torres-Rivera's request for a preliminary injunction is **GRANTED.**

## IV.  CONCLUSION

The Court finds (1) that Law 45 in effect when Torres-Rivera was appointed clearly indicated that the Chair of the Puerto Rico

Industrial Commission was to be appointed to a six-year term; (2) that plaintiff Torres-Rivera had a valid expectation of continuity in his employment, and thus a property interest in his office; (3) that plaintiff Torres-Rivera was not afforded his procedural due process rights pursuant to the Fourteenth Amendment prior to his removal; and (4) that plaintiff Torres-Rivera has satisfied his burden of proof and is entitled to a preliminary injunction on Fourteenth Amendment grounds. Accordingly, (1) the Court **VACATES** defendant Lozada-Crespo's appointment as Chairwoman and Commissioner of the Puerto Rico Industrial Commission; (2) **ORDERS** the defendants to maintain plaintiff Torres-Rivera as Chairman and Commissioner; and (3) **ENJOINS** the defendants from removing plaintiff Torres-Rivera from his position as Chairman and Commissioner of the Puerto Rico Industrial Commission without due process of law.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, January 31, 2014.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE